Michael Lozeau (Bar No. 142893)
    michael@lozeaudrury.com
David Zizmor (Bar No. 255863)
    david@lozeaudrury.com
LOZEAU | DRURY LLP
1516 Oak Street, #216
Alameda, California 94501
Telephone: (510) 749-9102
Facsimile: (510) 749-9103

Daniel Cooper (Bar No. 153576)
    daniel@lawyersforcleanwater.com
Samantha Williams (Bar No. 251344)
    samantha@ lawyersforcleanwater.com
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

*Attorneys for Plaintiff*
California Sportfishing Protection Alliance



**FILED**

JUL 29 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a California non-profit corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>EL DORADO IRRIGATION DISTRICT, a California irrigation district.<br><br>    Defendant. | Case No. 2-10-CV-00235-JAM-JFM<br><br>**STIPULATION TO DISMISS PLAINTIFF'S CLAIMS; [PROPOSED] ORDER GRANTING DISMISSAL [FRCP 41(a)(2)]**<br><br>Conference: n/a<br>Time: n/a<br>Courtroom: n/a<br><br>Judge: Hon. John A. Mendez |

WHEREAS, on or about October 27, 2009, Plaintiff California Sportfishing Protection Alliance ("CSPA") provided Defendant El Dorado Irrigation District ("EID"), the Administrator and the Regional Administrator for Region IX of the United States Environmental Protection Agency ("EPA"), the Executive Director of the California State Water Resources Control Board, and the Executive Officer of the California Regional Water Quality Control Board, Central Valley Region with a Notice of Violation and Intent to File Suit under Section 505 of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. § 1365.

WHEREAS, on January 8, 2010, CSPA sent the District a letter notifying EID of CSPA's intent to seek a peremptory writ of mandate ordering the District to comply with the SSO WDR and Master Reclamation Permit ("Writ Notice Letter").

WHEREAS, on or about January 28, 2010, CSPA filed its Complaint in the United States District Court for the Eastern District of California against the District, *California Sportfishing Protection v. El Dorado Irrigation District.* (USDC, E.D. Cal., Case No. 2:10-cv-00235-JAM-JFM) ("Complaint").

WHEREAS, CSPA and the District, through their authorized representatives and without either adjudication of CSPA's claims or admission by EID of any alleged violation or other wrongdoing, have chosen to resolve in full by way of settlement the allegations of CSPA as set forth in the Notice and Complaint, thereby avoiding the costs and uncertainties of further litigation. A copy of the Settlement Agreement and Mutual Release of Claims ("Settlement Agreement") entered into by and between CSPA and EID is attached hereto as Exhibit A and incorporated by reference.

WHEREAS, the parties submitted the Settlement Agreement via certified mail, return receipt requested, to the U.S. EPA and the U.S. Department of Justice and on July 12, 2010, the federal agencies submitted a letter to the Court indicating that the agencies have no objections to the terms of the Settlement Agreement.

NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to by and between the parties that CSPA's claims, as set forth in the Notices and Complaint, be dismissed with prejudice. The parties respectfully request an order from this Court dismissing such claims. In accordance with paragraph 22 of the Settlement Agreement, the parties also request that this Court maintain jurisdiction over the parties through the termination date of the Settlement Agreement set forth at

1 Section VI, Paragraph 8.a for the sole purpose of resolving any disputes between the parties with

2 respect to enforcement of or compliance with any provision of the attached and incorporated

3 Settlement Agreement.

4 Dated: July 28, 2010                    Respectfully submitted,

5                                               LOZEAU DRURY LLP

6                              By:     *Michael R. Lozeau*
7                                      Michael R. Lozeau
                                       Attorney for Plaintiff
8                                      CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

9
                                               DOWNEY BRAND LLP
10
                             By:     *Nicole Granquist* (as authorized on July 28, 2010)
11                                     Nicole Granquist
                                       Attorney for Defendant
12                                     EL DORADO IRRIGATION DISTRICT

13

14                                        PROPOSED ORDER

15 Good cause appearing, and the parties having stipulated and agreed,

16        IT IS HEREBY ORDERED that Plaintiff California Sportfishing Protection Alliance's

17 claims against Defendant El Dorado Irrigation District, as set forth in the Notices and Complaint

18 filed in Case No. 2:10-cv-00235-JAM-JFM, are hereby dismissed with prejudice.

19        IT IS FURTHER ORDERED that the Court shall retain jurisdiction over the parties through

20 March 1, 2016, as set forth in Paragraph 22 of the Settlement Agreement and as qualified by Section

21 VI, paragraph 8.a., of the Settlement Agreement, for the sole purpose of enforcing compliance by the

22 parties with this Order, including the terms of the Settlement Agreement attached to the parties'

23 Stipulation to Dismiss as Exhibit A, which Settlement Agreement is hereby incorporated by

24 reference.

25 PURSUANT TO STIPULATION, IT IS SO ORDERED.

26

27 Dated:   1-29-2010                         _____
                                               Honorable John A. Mendez
28                                             United States District Court Judge

                                                2

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("AGREEMENT") is entered into between the California Sportfishing Protection Alliance ("CSPA") and the El Dorado Irrigation District ("District") (individually, a "Settling Party" and collectively, the "Settling Parties") with respect to the following facts and objectives:

## I.   RECITALS

**WHEREAS,** CSPA is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the preservation, protection, and restoration of the environment, wildlife, and natural resources of all waters of California, including the San Joaquin River and the Sacramento-San Joaquin River Delta. Bill Jennings is the Executive Director of CSPA and a member of CSPA.

**WHEREAS,** the DISTRICT is an irrigation district organized under California's Irrigation District Law (Water Code sections 20500, *et seq.*) that, among other facilities and functions, owns and operates two recycled water treatment plants in El Dorado County, the El Dorado Hills Wastewater Treatment Plant ("EDH Facility") and the Deer Creek Wastewater Treatment Plant ("DC Facility"). The District also owns and operates the collection systems that convey wastewater separately to the EDH and Deer Creek Facilities (the "EDH Collection System" and the "DC Collection System," respectively). The EDH Facility and EDH Collection System are regulated by National Pollutant Discharge Elimination System ("NPDES") Permit No. CA0078671 (California Regional Water Quality Control Board, Central Valley Region, ("Regional Water Board') Order Nos. 5-01-135 and R5-2007-0069 and the associated Monitoring & Reporting Programs) ("EDH NPDES Permit"), and the DC Facility and DC Collection System are regulated by NPDES Permit No. CA0078662 (Regional Water Board Order Nos. R5-2002-0210, as amended by Resolution No. R5-2005-0028, and R5-2008-0173, as amended by Time Schedule Order No. R5-2008-0174, and the associated Monitoring & Reporting Programs) ("DC NPDES Permit"). The EDH and DC Collection Systems are also

1

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

regulated by *Statewide General Waste Discharge Requirements for Sanitary Sewer Systems*, State Water Resources Control Board, Order No. 2006-0003-DWQ and the associated Monitoring & Reporting Program as amended by Order No. WQ 2008-0002-EXEC ("SSO WDR"). Provision of recycled water to end users for irrigation from the EDH and DC Facilities is regulated by a Master Reclamation Permit issued by the Regional Water Board, Order No. 5-01-146, and the associated Monitoring & Reporting Program ("Master Reclamation Permit").

**WHEREAS**, on or about October 27, 2009, CSPA provided EID, the Administrator and the Regional Administrator for Region IX of the United States Environmental Protection Agency ("EPA"), the Executive Director of the California State Water Resources Control Board ("State Board"), and the Executive Officer of the California Regional Water Quality Control Board, Central Valley Region ("Regional Board") with a Notice of Violation and Intent to File Suit ("CWA Notice Letter") under Section 505 of the Federal Water Pollution Control Act (the "Act", "Clean Water Act," or "CWA"), 33 U.S.C. § 1365. The Notice Letter alleged that the District violated and continues to violate the Clean Water Act for discharges of pollutants in violation of the NPDES Permits for the EDH and DC Facilities and Collection Systems, and/or for discharges not authorized by the NPDES Permits for the EDH and DC Facilities and Collection Systems.

**WHEREAS**, on January 8, 2010, CSPA sent the District a letter notifying EID of CSPA's intent to seek a peremptory writ of mandate ordering the District to comply with the SSO WDR and Master Reclamation Permit ("Writ Notice Letter").

**WHEREAS**, on or about January 28, 2010, CSPA filed its Complaint in the United States District Court for the Eastern District of California against the District, *California Sportfishing Protection v. El Dorado Irrigation District.* (USDC, E.D. Cal., Case No. 2:10-cv-00235-JAM-JFM) ("Complaint").

2

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

**WHEREAS,** the District denies any and all of CSPA's allegations and claims in the CWA Notice Letter, Writ Notice Letter, and Complaint; and denies CSPA is entitled to the relief requested in the Complaint;

**WHEREAS,** the Settling Parties, through their authorized representatives and without either adjudication of CSPA's claims or admission by the District of any alleged violation or other wrongdoing, have chosen to resolve in full CSPA's allegations in the CWA Notice Letter, Writ Notice Letter, and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

**WHEREAS,** the Settling Parties have agreed that it is in their mutual interest to enter into this Agreement setting forth the terms and conditions appropriate to resolving CSPA's allegations set forth in the CWA Notice Letter, Writ Notice Letter, and Complaint.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Settling Parties hereby agree as follows:

## II.    GENERAL OBJECTIVES

1.    The objectives of this Agreement are:

a.    To ensure that the District continues to use, implement, and improve ways, means, and methods to prevent sanitary sewer overflows;

b.    To ensure that the District continues to use, implement, and improve ways, means, and methods to prevent violations of, or comply with, applicable permits, laws, and regulations as related to sanitary sewer overflows.

## III.    JURISDICTION AND VENUE

2.    CSPA alleges that: a) the Eastern District Court of California has jurisdiction over the subject matter of the claims asserted by CSPA in the Complaint pursuant to section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States),

3

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

and 28 U.S.C. § 1367(a), which provides supplemental jurisdiction for claims based on state law, including, but not limited to, California Code of Civil Procedure § 1085, the California Water Code §§ 13000 *et seq.* (the "Porter-Cologne Water Quality Control Act" or "Porter-Cologne"); and b) venue for CSPA's Complaint is proper in the Eastern District Court of California pursuant to sections 309(b) and 505(c) of the Clean Water Act, 33 U.S.C. §§ 1319(b), 1365(c), and 28 U.S.C. §§ 1391(b) and (c). The District denies these allegations, but for purposes of settlement, the Settling Parties waive all objections that they may have to the District Court's ability to retain jurisdiction over the Settling Parties and this Agreement as specified in Section XIV of this Agreement.

## IV.   EFFECT OF AGREEMENT

3.      CSPA does not, by their consent to this Agreement, warrant or aver in any manner that the District's compliance with this Agreement will constitute or result in compliance with any Federal or State law or regulation. Nothing in this Agreement shall be construed to affect or limit in any way the obligation of the District to comply with all applicable Federal, State and local laws and regulations governing any activity required by this Agreement.

4.      Neither this Agreement, nor any payment pursuant to this Agreement, shall constitute evidence or be construed as a finding, adjudication, or acknowledgement of any fact, law, or liability by the Settling Parties, nor shall it be construed as an admission of violation of any law, rule, regulation, permit, or administrative order by the District. However, this Agreement and/or any payment pursuant to the Agreement may constitute evidence solely during dispute resolution or in other actions by either Settling Party seeking to enforce compliance with this Agreement. Except as otherwise provided in this Agreement, each Settling Party maintains and reserves any and all defenses and claims that it may have to any alleged violations that may be raised by the other Settling Party during the life of this Agreement.

## V.   APPLICABILITY

5.      The provisions of this Agreement apply to and bind the Settling Parties, including

4

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

any successors or assigns. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Agreement, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

6. The Settling Parties agree to be bound by this Agreement and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Agreement, the District does not admit liability for any purpose as to any allegation or matter arising out of the CWA Notice Letter, Writ Notice Letter, and/or the Complaint.

7. No change in ownership or corporate or other legal status of the District or any transfer of the District's assets or liabilities shall in any way alter the responsibilities of the District or any of its successors or assigns thereof, under this Agreement.

## VI.    EFFECTIVE DATE AND TERMINATION DATE

8. The term "Effective Date," as used in this Agreement, shall mean the day the District Court enters an order granting the Settling Parties stipulation to dismiss Plaintiff's claims with prejudice described in Section XIV of this Agreement.

a. This Agreement will terminate March 1, 2016 if the District meets its SSO Reduction Performance Standard for the year 2015, as set forth in Section VIII of this Agreement below. Failure to comply with the final SSO Reduction Performance Standard for the year 2015 will result in year to year extensions of the Agreement until the District achieves the final SSO Reduction Performance Standard. If, prior to March 1, 2016, the District submits to CSPA two consecutive Annual Reports pursuant to Section XI of this Agreement, that demonstrate compliance with the final SSO Reduction Performance Standard of 5 SSOs per 100 miles of Collection System set forth in Section VIII of this Agreement, the District can terminate this Agreement by providing written notice of termination to CSPA within sixty (60) days of submission of the second Annual Report, and the Agreement shall terminate as of that date provided the District is also in compliance with the Recycled Water Program Improvements specified in Section IX of this Agreement. If either of the Settling Parties has invoked the

5

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

Dispute Resolution Process pursuant to Section XV, and the dispute is active and has not been resolved at the time the Agreement would otherwise terminate, the Agreement shall continue in effect until the dispute is resolved, either through mutual agreement of the Settling Parties or by the District Court.

## VII.  DEFINITIONS

9.    Unless otherwise expressly defined herein, terms used in this Agreement, which are defined in the CWA, California's Porter-Cologne Water Quality Control Act, Water Code sections 13000 *et seq.*, or in regulations implementing these statutes, have the meaning assigned to them in the applicable statutes or regulations. Whenever terms listed below are used in this Agreement, the following definitions apply:

a.    "Day" means a calendar day. In computing any period of time under this Agreement, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

b.    "DC Collection System" means the sewer pipes and lines, manholes or maintenance holes, pump stations, and all appurtenances thereto under ownership of the District that are used to convey wastewater generated by residential, commercial, and industrial sources to the DC Facility. For purposes of this Agreement, the DC Collection System does include the Lower Lateral owned by the District, and does not include the Upper Lateral, Private Laterals, or other privately owned or operated infrastructure that connects to the DC Collection System.

c.    "Design Storm" means a 10-year, 24-hour storm event.

d.    "Dispute Resolution Process" means, collectively, the Informal Dispute Resolution and Formal Dispute Resolution procedures set forth in Section XV of this Agreement.

e.    "EDH Collection System" means the sewer pipes and lines, manholes or maintenance holes, pump stations, and all appurtenances thereto under ownership of the District that are used to convey wastewater generated by residential, commercial, and industrial sources

6

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

to the EDH Facility. For purposes of this Agreement, the EDH Collection System does include the Lower Lateral owned by the District, and does not include the Upper Lateral, Private Laterals, or other privately owned or operated infrastructure that connects to the DC Collection System.

f.　"EDH Recycled Water Distribution System" means the recycled water pipes and lines, manholes or maintenance holes, pump stations, and all appurtenances thereto under ownership of the District that are used to convey recycled water from the EDH Facility to end users for beneficial use, such as landscape irrigation, and regulated by the Master Reclamation Permit. For purposes of this Agreement, the EDH Recycled Water Distribution System does not include the privately owned recycled water pipes, lines, and other infrastructure connecting the EDH Recycled Water Distribution System to the end user.

g.　"Lower Lateral" means the lateral line owned by the District connecting a home or other structure to the District's sewer main extending from the sewer main to the back of the public right-of-way or District clean out, whichever is applicable to the lateral connection. Lower Laterals are generally connected to Private Laterals.

h.　"Sanitary Sewer Overflow" or "SSO" has the same meaning as those terms are defined in Section A.1. of the SSO WDR, or any amendment thereto, and which currently means: "any overflow, spill, release, discharge or diversion of untreated or partially treated wastewater from the EDH and DC Collection Systems. SSOs include: (i) Overflows or releases of untreated or partially treated wastewater that reach waters of the United States; (ii) Overflows or releases of untreated or partially treated wastewater that do not reach waters of the United States; and (iii) Wastewater backups into buildings and on private property that are caused by blockages or flow conditions within the publicly owned portion of a sanitary sewer system." For purposes of this definition, "waters of the United States" has the meaning as set forth in 40 C.F.R. § 122.2.

i.　"Upper Lateral" or "Private Lateral" means the private sanitary sewer

7

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

lateral or line connecting a home or other structure to the Lower Lateral, generally extending from the outside of the foundation of the structure to the public right-of-way or the District's cleanout, whichever is applicable.

      j.      "Year" shall mean a calendar year, unless otherwise specified.

## VIII.  SSO REDUCTION PERFORMANCE STANDARDS

    10.    SSO Reduction Performance Standards. It is the goal of this Agreement to reduce SSOs from the EDH and DC Collection Systems. The District shall reduce its SSOs in the EDH and DC Collection Systems as provided in Table 1 and the subsections of this paragraph.

**Table 1**

| Calendar Year | Maximum Number of SSOs Per 100 Miles of Collection System |
|---|---|
| 2010 & 2011 | 11 |
| 2012 | 10 |
| 2013 | 8 |
| 2014 | 6 |
| 2015 | 5 |

    a.    For purposes of determining compliance with the SSO Reduction Performance Standards, the maximum number of SSOs per 100 miles of collection system in a given year shall be determined by averaging the performance of both the EDH and DC Collection Systems.

    b.    For purposes of determining compliance with the SSO Reduction Performance Standards, SSOs occurring during storm events at or exceeding the Design Storm shall not be counted.

    c.    For purposes of determining compliance with the SSO Reduction

8

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

Performance Standards, the miles of pipes and lines in the EDH and DC Collection Systems as of the Effective Date of this Agreement equals 561 miles (283 miles in the EDH Collection System and 278 in the DC Collection System). The District shall document all changes to mileage totals in the Annual Report required under Section XI of this Agreement, and use the most current mileage totals for purposes of determining compliance with the SSO Reduction Performance Standards.

        d.      Failure to meet the final SSO Reduction Performance Standard in 2015 shall be a violation of this Agreement and subject to the Dispute Resolution Process set forth in Section XV.

## IX.   RECYCLED WATER PROGRAM IMPROVEMENTS

11.      It is the goal of this Agreement to reduce releases of recycled water from the District's EDH Recycled Water Distribution System. To optimize the EDH Recycled Water Distribution System, the District shall perform the following actions:

        a.  By July 1, 2010, the District shall install pressure data loggers in Villages A and E in the Serrano development to gather information during static and peak demand conditions. By July 1, 2011, the District shall review and utilize the data generated to analyze and determine where adjustments need to be made at pressure reducing stations (PRVs) and isolation valves. If the analysis recommends field adjustments to existing PRVs or isolation valves, the adjustments will be complete by October 1, 2011. If the analysis indicates high demand during specific days of the week, or at specific times of the day, the District shall facilitate the Serrano Owners Association adjusting the front yard sprinkler times to more evenly distribute the system demand during the peak hours of irrigation.

        b.  By December 31, 2010, the District shall complete a recycled water distribution

model (the "Model"). The Model shall include all 6-inch and larger recycled water transmission pipelines. Model calibration will be performed using results from pressure recordings.

c. If, based on results of the Model, recycled water distribution system appurtenances need to be repaired or replaced, the District shall add such repair or replacement projects to the District's next-adopted annual update to its five-year Capital Improvement Plan, and have repair(s) or replacement(s) complete by December 31, 2012.

## X.   EL DORADO HILLS WWTP COMPLIANCE

12.     During the life of this Agreement, the District shall comply with the receiving water limitation for temperature set forth in the EDH Permit (currently, Section V.A.15 of the EDH Permit), and continue implementing the District's Standard Operating Procedure for Carson Creek Discharge (last revised Feb. 2010) that addresses temperature monitoring and discharge criteria.

## XI.   ANNUAL REPORTS

13.     By February 28 of each year that this Agreement remains in effect, the District shall submit an Annual Report to CSPA. The Annual Report shall:

a.     Summarize, assess and document the District's progress towards meeting the SSO Reduction Performance Standards in Section VIII of this Agreement, and report compliance or non-compliance with the interim and final SSO Reduction Performance Standards.

b.     Provide details relevant to the District's implementation of, and compliance with, the requirements set forth in Sections IX and X of this Agreement during the preceding year, including any program modifications or delays during the prior calendar year or delays.

10

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

14.     The District agrees to make available to CSPA existing documents within the District's custody or control that are reasonably necessary to evaluate the District's compliance with this Agreement within thirty (30) days of written request by CSPA.

## XII.    SSO REDUCTION ACTION PLAN

15.     If the Annual Report required under Section XI of this Agreement documents compliance with the then-applicable SSO Reduction Performance Standards, the District shall have no obligation to prepare an SSO Reduction Action Plan as set forth herein.  However, if an Annual Report required under Section XI of this Agreement documents SSOs in excess of the SSO Reduction Performance Standards set forth in this Agreement, the District shall submit to CSPA by April 15th of that same year an SSO Reduction Action Plan.  Notwithstanding the previous sentence, if an SSO Reduction Plan is prepared for an exceedance of the 2011 SSO Reduction Performance Standard, the District shall not be required to submit an SSO Reduction Plan for 2012.  An SSO Reduction Action Plan prepared pursuant to this section shall specify the actions taken in the calendar year for which the Annual Report was submitted, and shall specify additional program elements and measures to be taken during the next calendar year and thereafter, which are designed to achieve compliance with the SSO Reduction Performance Standards set forth in this Agreement.  The SSO Reduction Action Plan shall include a proposed schedule for implementation of all actions proposed.

16.     CSPA shall provide the District, in writing, with all recommended revisions to the SSO Reduction Action Plan within forty-five (45) days of receipt of such SSO Reduction Action Plan.  The District shall consider each of CSPA's recommended revisions and indicate within forty-five (45) days of receipt whether the District accepts each such recommendation for revision.  All revisions to the SSO Reduction Action Plan recommended by CSPA, determined by the District or the District Court to be reasonable, shall be accepted by the District.  If the District does not accept each of CSPA's recommendations, and remaining differences cannot be informally resolved promptly between the Settling Parties, then either party may seek dispute

11

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

resolution pursuant to Section XV of this Agreement. In any such Dispute Resolution Process, the District shall demonstrate by a preponderance of the evidence that the elements or actions set forth in the SSO Reduction Action Plan are designed to achieve compliance with the SSO Reduction Performance Standards set forth in Section VIII of this Agreement, and, taken as a whole, constitute sound engineering and operational approaches to achieving compliance. If the District rejects any revision to the SSO Reduction Action Plan recommended by CSPA, the District bears the burden of demonstrating by a preponderance of the evidence that such rejected revision(s) are unreasonable. After the Settling Parties have reached agreement on the SSO Reduction Action Plan or after the Dispute Resolution Process resolves any dispute concerning the SSO Reduction Action Plan, the District shall begin implementation of the SSO Reduction Action Plan as an enforceable requirement of this Agreement within sixty (60) days of agreement or upon the schedule set forth therein, if earlier. To the extent the Settling Parties do not dispute specific original provisions of the SSO Reduction Action Plan or specific recommended revisions, the District shall implement all undisputed provisions or revisions, if possible.

## XIII. PAYMENT OF LITIGATION COSTS, MONITORING OF CONSENT DECREE COMPLIANCE, AND MITIGATION PAYMENT

17. Litigation Fees and Costs. To help defray CSPA's attorneys, consultant, and expert fees and costs, and any other costs incurred as a result of investigating, filing the Complaint, and negotiating a settlement, the District shall pay CSPA the sum of One Hundred Twenty thousand dollars ($120,000) which shall include all attorneys' fees and costs for all services performed by and on behalf of CSPA by its attorneys and consultants up to and through the Effective Date of this Agreement. The payment shall be made within ten (10) days of the Effective Date of this Agreement. The payment shall be made in the form of a check payable to "Lozeau Drury LLP Attorney-Client Trust Account" addressed to: 1516 Oak Street, Suite 216, Alameda, CA 94501, sent overnight delivery, and shall constitute full satisfaction of all costs of litigation incurred by CSPA that have or could have been claimed in connection with or arising

12

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

out of the CWA Notice Letter, Writ Notice Letter, and Complaint, up to and including the
Effective Date.

18.    Compliance Monitoring. As reimbursement for CSPA's future fees and costs that
will be incurred in order for CSPA to monitor the District's compliance with this Agreement, and
to evaluate the District's Annual Reports and, if necessary, SSO Reduction Action Plans, the
District agrees to reimburse CSPA for fees and costs incurred in overseeing the implementation
of this Agreement as follows:

> a.  If the District is only required to submit an Annual Report in any given year, the
>     District shall reimburse CSPA in the amount of Two Thousand dollars
>     ($2,000.00) for each such year.
>
> b.  If the District is required to submit an SSO Reduction Action Plan in any given
>     year, the District shall reimburse CSPA in the amount of Seven Thousand Five
>     Hundred dollars ($7,500.00) for each such year.

Each payment shall be made on or before March 15 of each year, starting March 15, 2011. Each
payment shall be made in the form of a check payable to "Lozeau Drury LLP Attorney-Client
Trust Account" addressed to: Michael Lozeau, Lozeau Drury LLP, 1516 Oak Street, Suite 216,
Alameda, CA 94501.

19.    Mitigation Payment. In recognition of the good-faith efforts by the District to
comply with its Permits, the federal Clean Water Act, and the California Porter-Cologne Water
Quality Control Act, and in lieu of payment by the District of any penalties and costs which may
have been assessed if the Complaint had proceeded to trial and CSPA prevailed, the Settling
Parties agree that the District will pay the sum of One Hundred Twenty thousand dollars
($120,000.00) to the Rose Foundation for Communities and the Environment ("Rose
Foundation") to be used to fund environmental project activities designed to improve and/or
protect water quality in the Cosumnes River and the Sacramento San Joaquin Bay-Delta Estuary.
The Settling Parties agree that the Rose Foundation will direct the funds to one or more

13

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

proposals submitted by the American River Conservancy for the benefit of the Pine Hill Preserve, more fully described in Exhibit 1, if a suitable grant application(s) is submitted by the American River Conservancy to the Rose Foundation for this purpose within six (6) months of the Effective Date of this Agreement. To be suitable, a grant application submitted by the American River Conservancy shall include, but not be limited to, a description of the anticipated benefits to water quality in the Cosumnes River from the project and a program designed to quantify the project's anticipated benefits to water quality in the Cosumnes River.

20.    The Rose Foundation shall not retain any portion of the funds, except for the normal cost necessary to cover its overhead, not to exceed 8% of the total project fund. The Rose Foundation shall provide notice to the Settling Parties and the U.S. Department of Justice within thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds. If the Rose Foundation awards any funds to the American River Conservancy, either Settling Party may request an update from the American River Conservancy regarding work performed under the project utilizing such funds. Payment to the Rose Foundation shall be due within ten (10) days of the Effective Date of this Agreement, with payment sent to:

> The Rose Foundation for Communities and the Environment
> 6008 College Avenue, Suite 10
> Oakland, California 94618
> Attn: Tim Little

## XIV.  COMMITMENTS OF CSPA

21.    Submission of Agreement to Federal Agencies.  CSPA shall submit a copy of this Agreement to the United States Environmental Protection Agency ("EPA") and the United States Department of Justice ("DOJ") within three (3) business days of its execution for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by the certified return receipts, copies of which shall be

14

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

provided by CSPA to the District. In the event that EPA or DOJ comment negatively on the
provisions of this Agreement, the Settling Parties agree to meet and confer to attempt to resolve
the issue(s) raised by EPA or DOJ.

22.     Stipulation to Dismiss With Prejudice and [Proposed] Order.  Within ten (10)
calendar days of the expiration of the Agencies' review period specified in Paragraph 21 above,
CSPA shall file a Stipulation to Dismiss With Prejudice and [Proposed] Order thereon pursuant
to Federal Rule of Civil Procedure 41(a)(2) with the United States District Court for the Eastern
District of California ("District Court"), with this Agreement attached as Exhibit A thereto and
incorporated by reference, specifying that CSPA is dismissing with prejudice all claims in
CSPA's Complaint. The Stipulation to Dismiss with Prejudice and [Proposed] Order shall state
that the District Court will maintain jurisdiction over the parties for purposes of resolving any
disputes between the Settling Parties with respect to any provision of this Agreement
incorporated into the Court's dismissal Order. In resolving such disputes, the Court may order
any appropriate remedy including, but not limited to, contempt sanctions. CSPA is responsible
for notifying the District of the District Court's entry of the Order dismissing with prejudice. If
the District Court chooses not to enter the Order, this Agreement shall be null and void.

## XV.   BREACH OF AGREEMENT/DISMISSAL ORDER AND DISPUTE RESOLUTION PROCEDURES

23.     Force Majeure.  The District shall notify CSPA pursuant to the terms of this
paragraph, when implementation of the requirements set forth in this Agreement, within the
deadlines set forth in those paragraphs, becomes impossible, despite the timely good-faith efforts
of the District, due to circumstances beyond the control of the District or its agents, and which
could not have been reasonably foreseen and prevented by the exercise of due diligence by the
District. Any delays due to the District's failure to make timely and bona fide applications and
to exercise diligent efforts to comply with the terms in this Agreement shall not, in any event, be
considered to be circumstances beyond the District's control. Financial inability shall not, in any

15

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

event, be considered to be circumstances beyond the District's control.

a.      If the District claims impossibility, it shall notify CSPA in writing within thirty (30) days of the date that the District first knew of the event or circumstance that caused or would cause non-performance with the terms of this Agreement, or the date the District should have known of the event or circumstance by the exercise of due diligence. The notice shall describe the reason for the non-performance and specifically refer to this Section of this Agreement. The notice shall describe the anticipated length of time the non-performance may persist, the cause or causes of the non-performance, the measures taken or to be taken by the District to prevent or minimize the non-performance, the schedule by which the measures will be implemented, and the anticipated date of compliance. The District shall adopt all reasonable measures to avoid and minimize such non-performance.

b.      The Settling Parties shall meet and confer in good-faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible, despite the timely good faith efforts of the District, due to circumstances beyond the control of the District that could not have been reasonably foreseen and prevented by the exercise of due diligence by the District, new performance deadlines shall be established.

c.      If CSPA disagrees with the District's notice, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either Settling Party shall have the right to invoke the Dispute Resolution Process pursuant to Section XV of this Agreement. In such proceeding, the District shall bear the burden of proving that any delay in performance of any requirement of this Agreement was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

24.     The Dispute Resolution Process set forth in paragraphs 25 and 26 shall be the exclusive mechanism for resolving disputes between the Settling Parties with regard to any aspect of this Agreement.

25.     Informal Dispute Resolution. The Settling Parties agree to engage in Informal
16
SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

Dispute Resolution pursuant to the terms of this paragraph:

a. If a dispute under this Agreement arises, including whether any Settling Party believes that a violation of the Agreement and the Court's dismissal Order has occurred, the Settling Parties shall meet and confer (telephonically or in-person) within twenty-one (21) days of receiving written notification of a request for such meeting. During the meet and confer proceeding, the Settling Parties shall discuss the dispute and make best efforts to devise a mutually acceptable plan, including implementation dates, to resolve the dispute. The Settling Parties may, upon mutual written agreement, extend the time to conduct the meet and confer discussions beyond twenty-one (21) days.

b. If any Settling Party fails to meet and confer within the timeframes set forth in paragraph 25(a), or the meet and confer does not resolve the dispute, after at least twenty-one (21) days have passed after the meet and confer occurred or should have occurred, either Settling Party shall be entitled to initiate the Formal Dispute Resolution procedures outlined in paragraph 26 below.

26. Formal Dispute Resolution. The Settling Parties agree that any action or proceeding which is brought by any Settling Party against any other Settling Party pertaining to, arising out of or related to the requirements of the Court's dismissal Order and this Agreement shall first utilize the Informal Dispute Resolution meet and confer proceedings set forth in the preceding paragraph and, if not successful, the Settling Parties shall utilize the Formal Dispute Resolution procedures in this paragraph. The Settling Parties agree that Formal Dispute Resolution shall be initiated by filing a Motion to Show Cause or other appropriately titled motion ("Motion") in the United States District Court, Eastern District of California, before District Court Judge Mendez, to determine whether either party is in violation of the Agreement and the Court's dismissal Order and, if so, to require the violating party to remedy any violation identified by the District Court within a reasonable time frame. If Judge Mendez is not available to perform the role identified herein, the Settling Parties agree that the Motion shall be re-

17

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

assigned pursuant to applicable rules of the District Court. Litigation costs and fees incurred in
the Dispute Resolution Process shall be awarded in accord with the standard established by
section 505 of the Clean Water Act, 33 U.S.C. § 1365.

## XVI. NOTICES AND SUBMISSIONS

27. The District agrees to provide CSPA with all documents or reports required by
this Agreement. All notices required herein or any other correspondence pertaining to this
Agreement shall be sent by regular, certified, overnight, or electronic mail as follows:

If to CSPA:

Michael Lozeau
LOZEAU | DRURY LLP
1516 Oak Street, #216
Alameda, CA 94501
Telephone: (510) 749-9102
Email: michael@lozeaudrury.com

Daniel Cooper
Samantha Williams
LAWYERS FOR CLEAN WATER, INC.
1004 O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Email: daniel@lawyersforcleanwater.com
         samantha@lawyersforcleanwater.com

California Sportfishing Protection Alliance
Bill Jennings, Executive Director
3536 Rainier Avenue
Stockton, California 95204
Telephone: 209-464-5067
Fax: 209-464-1028
Email: deltakeep@aol.com

18

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

If to the District:

Thomas D. Cumpston
General Counsel
El Dorado Irrigation District
2890 Mosquito Road
Placerville, CA 95667
Telephone: (530) 642-4144
Fax: (530) 622-1195
Email: tcumpston@eid.org

Nicole E. Granquist
Downey Brand LLP
621 Capitol Mall, 18th Floor
Sacramento, CA 95814
Telephone: (916) 444-1000
Fax: (916) 444-2100
Email: ngranquist@downeybrand.com

Roberta L. Larson
Somach Simmons & Dunn
500 Capitol Mall, Suite 1000
Sacramento, CA 95814
Telephone: (916) 446-7979
Fax: (916) 446-8199
Email: blarson@somachlaw.com

28.    Notices or communications shall be deemed submitted on the date that they are
postmarked and sent by first-class mail, deposited with an overnight mail/delivery service, or
sent via electronic message. Any change of address or addresses shall be communicated in
writing in the manner described above for giving notices. In addition, the Settling Parties may
agree to transmit documents electronically or by facsimile.

29.    During the life of this Agreement, the District shall preserve at least one legible
copy of all records and documents, including computer-stored information, which relate to
performance of its obligations under this Agreement.

30.    All Annual Reports and SSO Reduction Action Plans required to be submitted by

19

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

the District to CSPA pursuant to this Agreement shall contain the following certification, signed
and dated by a responsible official:

I certify under penalty of perjury that this document and all attachments were prepared
under my direction or supervision in accordance with a system designed to assure that
qualified personnel properly gather and evaluate the information submitted and is, to the
best of my knowledge and belief, true, accurate and complete.

## XVII. MUTUAL RELEASE OF LIABILITY AND
## COVENANT NOT TO SUE

31.     As of the Effective Date of this Agreement, the Settling Parties and their

successors, assigns, directors, officers, agents, attorneys, representatives, and employees, hereby

release all persons from any and all claims and demands of any kind, nature, or description, and

from any and all liabilities, relief, damages, fees (including fees of attorneys, experts, and

others), injuries, actions, or causes of action, either at law or in equity, whether known or

unknown, arising from CSPA's allegations regarding the District's compliance with the Clean

Water Act, Porter-Cologne Water Quality Control Act, EDH NPDES Permit, DC NPDES

Permit, SSO WDR and the Master Reclamation Permit as set forth in the CWA Notice Letter,

Writ Notice Letter, and/or Complaint, including all claims for fees, costs, expenses, or any other

sum incurred or claimed or which could have been claimed, up to and including the Effective

Date of this Agreement, except as provided for in Section XV of this Agreement.

32.     The Settling Parties acknowledge that they are familiar with section 1542 of the

California Civil Code, which provides:

A general release does not extend to claims which the creditor does not know or
suspect to exist in his or her favor at the time of executing the release, which if known by
him or her must have materially affected his or her settlement with the debtor.

The Parties hereby waive and relinquish any rights or benefits they may have under

California Civil Code section 1542 with respect to any other claims against each other arising

20

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

from the allegations and claims as set forth in the CWA Notice Letter, Writ Notice Letter, and/or the Complaint.

33.     For the period beginning on the Effective Date and ending on the Termination Date, CSPA agrees that neither CSPA, its officers, executive staff, members of its governing board nor any organization under the control of CSPA, its officers, executive staff, or members of its governing board, will file any lawsuit against the District seeking relief for alleged violation of the Clean Water Act as it pertains to compliance with the EDH NPDES Permit, the DC NPDES Permit, the SSO WDR, or the Master Reclamation Permit, or any revisions, amendments, or successors to these permits, or similar state statutes and/or regulations, nor will CSPA support such lawsuits against the District brought by other groups or individuals by providing financial assistance, personnel time, or any other affirmative actions.

34.     Nothing in this Agreement limits or otherwise affects CSPA's right to participate in, address, or take any position that it deems necessary or appropriate in any formal or informal proceeding before any judicial or administrative body on any other matter relating to the District, including the issuance of revisions, amendments, or successors to the EDH NPDES Permit, the DC NPDES Permit, the SSO WDR, or the Master Reclamation Permit.

## XVIII.     GENERAL PROVISIONS

35.     **Construction.** The language in all parts of this Agreement shall be construed according to its plain and ordinary meaning, except as to those terms are defined by law, in the CWA, California's Porter-Cologne Water Quality Control Act, Water Code sections 13000 *et seq.*, in regulations implementing these statutes, or specifically herein.

36.     **Choice of Law.** This Agreement shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

37.     **Severability.** In the event that any provision, section, or sentence of this Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall

21

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

not be adversely affected.

38.     **Counterparts.** This Agreement may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, .pdf, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Agreement.

39.     **Assignment.** Subject only to the express restrictions contained in this Agreement, all of the rights, duties and obligations contained in this Agreement shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns.

40.     **Modification of the Agreement:** This Agreement, and any provisions herein, may not be changed, waived, discharged or terminated, other than termination pursuant to Section VI of this Agreement, unless by a written instrument, signed by the Settling Parties.

41.     **Full Settlement.** This Agreement constitutes a full and final settlement of this matter. The Settling Parties expressly understand and agree that each Settling Party has freely and voluntarily entered into the Agreement with and upon advice of counsel.

42.     **Integration Clause.** This is an integrated Agreement. This Agreement is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations and warranties (express or implied) concerning the subject matter of this Agreement.

43.     **Negotiated Agreement.** The Settling Parties have negotiated this Agreement, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Agreement and any uncertainty and ambiguity shall not be interpreted against any one Settling Party.

44.     **Authority.** The undersigned representatives for CSPA and the District each certify that he is fully authorized by the party whom he represents to enter into the terms and conditions of this Agreement.

22

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

45.     If for any reason the District Court should decline to approve this Agreement in the form presented, the Settling Parties shall use their best efforts to work together to modify the Agreement within thirty (30) days of receiving notice by District Court so that it is acceptable to the District Court. If the Parties are unable to modify this Agreement in a mutually acceptable manner that is also acceptable to the District Court, this Agreement shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408.

The Settling Parties hereby enter into this Agreement.

Date:_____, 2010              CALIFORNIA SPORTFISHING PROTECTION
                                        ALLIANCE


                                        _____
                                        By: Bill Jennings
                                        Chairman, Board of Directors

Date: _5/24___, 2010                    EL DORADO IRRIGATION DISTRICT

                                        _____
                                        By: Jim Abercrombie
                                        General Manager


**APPROVED AS TO FORM:**

For PLAINTIFF CSPA

Date: _____, 2010____        LOZEAU DRURY LLP


                                        _____
                                        By:     Michael R. Lozeau


23
SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

45.     If for any reason the District Court should decline to approve this Agreement in the form presented, the Settling Parties shall use their best efforts to work together to modify the Agreement within thirty (30) days of receiving notice by District Court so that it is acceptable to the District Court. If the Parties are unable to modify this Agreement in a mutually acceptable manner that is also acceptable to the District Court, this Agreement shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408.

The Settling Parties hereby enter into this Agreement.

Date:_____5/25_____, 2010

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

By: Bill Jennings
Chairman, Board of Directors

Date:_____5/24_____, 2010

EL DORADO IRRIGATION DISTRICT

By: Jim Abercrombie
General Manager

**APPROVED AS TO FORM:**

For PLAINTIFF CSPA

Date: May 25, 2010_____

LOZEAU DRURY LLP

By:    Michael R. Lozeau

23

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

For DEFENDANT
EL DORADO IRRIGATION DISTRICT

Date: _May 24_, 2010

DOWNEY BRAND LLP

By: _/Nicole E. Granquist, Esq/_

24

SETTLEMENT AGREEMENT: CSPA v. EL DORADO IRRIGATION DISTRICT

# EXHIBIT 1

EL DORADO IRRIGATION DISTRICT
SUPPLEMENTAL ENVIRONMENTAL PROJECT PROPOSAL
PINE HILL PRESERVE ACQUISITION

The Pine Hill Preserve is a network of lands dedicated to the conservation and recovery of six endemic plant species, five of which are listed as endangered or threatened under the Federal Endangered Species Act. The chief threat to the species' continued survival is the conversion of habitat by residential and commercial/industrial land development. The El Dorado Irrigation District (EID) has been an active participant in the establishment and expansion of the Pine Hill Preserve since 1997.

The total Pine Hill Preserve size was originally recommended at 3,500 acres in five separate units. In December 1998, the U.S. Fish and Wildlife Service released the Draft Recovery Plan for Gabbro Soil Plants of the Central Sierra Nevada Foothills. This plan recommended a preserve size of 5,000 acres, 1,500 more than the original 3,500 acres. EID understands that the Pine Hill Preserve is currently comprised of a total of 4,122 acres, with 3,276 of these acres included in an area designated for the recovery of the five federally listed plants.

A local land trust, the American River Conservancy (ARC), typically identifies willing sellers of lands designated or suitable for preserve uses. ARC acts as a facilitator for the transactions, arranging funding and taking pass-through title before deeding the lands to BLM, and continues to identify acquisition opportunities. The current market environment is particularly well-suited to advantageous transactions, if funding can be obtained.

EID believes that any funds dedicated to a supplemental environmental project included in the parties' settlement should be directed towards land acquisition for the Pine Hill Preserve. Preservation of these lands will benefit water quality in the region – for example, precluding more dense development in the watershed will reduce potential urban storm water impacts and may control the rate of municipal wastewater discharges.

More information can be obtained at: http://www.pinehillpreserve.org/